## Railroad Police.

SCHNADER, Special Dep. Att'y-Gen., March 25, 1930.—We have your letter requesting us to advise you whether you should take any action by reason of the following circumstances:

A railroad policeman, commissioned by the Governor, also holds a constable's commission and is at the same time acting as a constable and as a railroad policeman.

Your Secretary for Industrial Police feels that the two offices are incompatible and has submitted the facts to you for such action as you may see fit to take.

Railroad policemen are appointed under the provisions of the Act of Feb. 27, 1865, P. L. 225. This act provides that any railroad corporation operating in Pennsylvania may apply to the Governor to commission such persons as the corporation may designate to act as railroad policemen; and that the Governor, upon such application, "may appoint such persons or so many of them as he may deem proper, to be such policemen, and shall issue, to such person, or persons, so appointed, a commission to act as such policemen."

Persons appointed railroad policemen must take and subscribe the constitutional oath of office, which must be filed with the Secretary of the Commonwealth and recorded in every county in which the policeman is to act, have the power of policemen of the City of Philadelphia, and are required to wear badges containing the words "Railroad Police," which must be in plain view, except when the policemen are employed as detectives.

Compensation is paid by the companies for which the policemen are appointed.

There is no provision in the act for the removal by the Governor of policemen commissioned by him thereunder; and the only provision relative to the termination of the commission is that contained in section 6, which provides that whenever any railroad shall no longer require the services of a policeman appointed under the act, it shall file a notice to that effect in the several offices where the commission of the policeman has been recorded, this notice to be noted by the recorders of deeds upon the margin of the record where the commission is recorded, and, thereupon, the power of such policeman shall cease and be determined.

The act authorizing the Governor to commission these policemen does not empower him to remove them, nor is there any other act of assembly which specifically authorizes the Governor to revoke commissions issued by him under the Act of 1865. If, therefore, the Governor has any power to remove a railroad policeman, it is conferred upon him by article VI, section 4, of the Constitution, which provides, among other things, that "appointed officers,

other than judges of the courts of record and the Superintendent of Public Instruction, may be removed at the pleasure of the power by which they shall have been appointed." This section clearly applies only to public officers. If railroad police are public officers appointed by the Governor, they may be removed under the constitutional provision quoted. If they are not public officers, the Governor does not have any power of removal, because the power is not conferred upon him by any constitutional or statutory provision.

Railroad police have a dual capacity. They are at the same time employees of a private corporation and public police officers, having the authority of municipal policemen.

Thus, when acting as employees of the railroad for which they are appointed, their actions may justify the recovery of damages against the railroad, Tufshinsky v. Pittsburgh, etc., R. R. Co., 61 Pa. Superior Ct. 121 (1915); but in making an arrest in the discharge of their public duties as police officers, they are not regarded as employees of the railroad in such a sense as to sustain a verdict against the railroad for false arrest: Bunting v. Pennsylvania R. R. Co., 284 Pa. 117 (1925), and Naugle v. Pennsylvania R. R. Co., 83 Pa. Superior Ct. 528 (1924).

In the Bunting case, Mr. Justice Frazer, speaking for the Supreme Court, said, at page 121:

". . . under the charge of forgery and embezzlement made at the instance of one in no manner connected with defendant company, it must be presumed the officer, in making the arrest and also in the subsequent conduct in having plaintiff held to bail, was not acting for and on behalf of defendant company but as a *public police officer*. . . ."

Similar language was employed by the Superior Court in the Naugle case.

It is true that railroad policemen are paid by the railroads, but it is also true that they cannot begin to function as such until they have been commissioned by the Governor and have taken the constitutional oath of office, and that in the discharge of their duties they have the same authority which is conferred by law upon police officers in cities of the first class. Accordingly, while these officers are anomalous, in that they are charged with the performance both of public and of private duties, nevertheless, we are clearly of the opinion that they are public officers within the meaning of article VI, section 4, of the Constitution and may be removed by the Governor at pleasure.

Should a railroad policeman be removed because he is also a constable?

There is no constitutional or statutory provision specifically declaring incompatible the offices of railroad policeman and constable. However, a constable is an elected public officer, whose duties are in a large measure police duties. The work of a constable and of a railroad policeman is work of a similar character; and when the same person is acting in both capacities we cannot conceive that it would be possible clearly to distinguish at all times between the duties he was performing as constable and the duties he was performing as a railroad policeman. There should be no ground for suspicion that, in the performance of his duties, an elected public officer of any grade is subject to the directions of a private corporation, and it seems to us that it is highly improper for a constable to serve during his term of office as such, also as a railroad policeman. This, however, is not a conclusion required by any constitutional or statutory provision or any adjudicated case. Whether a constable should be permitted to function as a railroad policeman is, in the last analysis, a question of policy which you alone have jurisdiction to determine.

From C P. Addams, Harrisburg, Pa.